## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

LA UNION DEL PUEBLO ENTERO,
SARAH DOE, MARY DOE, JOHN DOE,
AND JAMES DOE,

*Plaintiffs*,

v.

GREGORY ABBOTT, in his official capacity
of Governor of Texas, STEVEN C.
MCCRAW, in his official capacity as
Director of Texas Department of Public
Safety, WARREN K. PAXTON, in his
official capacity as the Texas Attorney
General, TORIBIO "TERRY" PALACIOS, in
his official capacity as Hidalgo County
District Attorney, BRYAN GOERTZ, in his
official capacity as the Bastrop County
District Attorney, JOSH TETENS, in his
official capacity as the McLennan County
District Attorney, and KIM OGG, in her
official capacity as the Harris County District
Attorney,

*Defendants*.

Cause No.1:24-CV-270

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
### OF PLAINTIFFS LA UNION DEL PUEBLO ENTERO, ET AL.

### I.       INTRODUCTION

1.      This action challenges Senate Bill 4, enacted in 2023 by the 88th Texas Legislature in its

4th called session ("SB 4"). SB 4 creates state immigration offenses for unlawful entry and

reentry into Texas, authorizes, in some cases requires, state judges and magistrates to order

the removal of non-U.S. citizens from the United States, and creates an offense of refusal

1

to comply with a removal order. Under SB 4, Texas state and local officials are empowered to arrest, detain, prosecute and incarcerate individuals for immigration-related offenses and order the removal of individuals from the United States.

2. SB 4 encroaches upon the federal government's exclusive authority to regulate immigration and interferes with the federal immigration system carefully created by Congress. SB 4 further prevents federal officials from making decisions that are exclusively within their authority and deprives individuals of the rights and protections afforded by the federal immigration system, including the right to seek asylum and withholding of removal.

3. SB 4 further violates the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution by subjecting individuals to unreasonable seizures and to the cruel and unusual punishment of exile from the U.S., and by depriving individuals of their liberty based on impermissibly vague and overbroad language defining criminal offenses.

## II.      JURISDICTION AND VENUE

4. This Court has original jurisdiction over Plaintiffs' causes of action under the laws and Constitution of the United States under 28 U.S.C. § 1331 and §1343 and 42 U.S.C. § 1983. This Court has original jurisdiction over Plaintiffs' request for declaratory and injunctive relief under 28 U.S.C. § 2201 and § 2202.  Jurisdiction for Plaintiffs' claim for costs and attorney's fees is based upon 42 U.S.C. § 1988.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendants reside within this district and a substantial part of the events giving rise to this action occurred within this judicial district.

### III.   PARTIES

**A.   Plaintiffs**

6.   Plaintiff LA UNION DEL PUEBLO ENTERO ("LUPE") is a nonprofit membership organization founded in 1989 by labor rights activists César Chávez and Dolores Huerta. LUPE's mission is to build strong, healthy communities in the Texas Rio Grande Valley through community organizing, low-cost legal services, and civic engagement.

7.   LUPE is headquartered in San Juan, Texas, and its members primarily reside in Hidalgo, Cameron, Willacy, and Starr Counties, Texas.   LUPE has more than 8,000 members throughout the Texas Rio Grande Valley. Most of LUPE's members are Latino and some are non-U.S. citizens who are lawfully present in the United States but who are subject to arrest, detention, prosecution, incarceration and removal to Mexico under SB 4.

8.   Plaintiff SARAH DOE is a non-U.S. citizen and a resident of Harris County, Texas. Plaintiff SARAH DOE recently became a U.S. lawful permanent resident after being granted a T Visa as a victim of a severe form of human trafficking.   Although she has lawful permanent residency, Plaintiff SARAH DOE is subject to arrest, detention, prosecution, incarceration and removal to Mexico under SB 4.   Plaintiff SARAH DOE's country of origin is Honduras.

9.   Plaintiff MARY DOE is a non-U.S. citizen and a resident of McLennan County, Texas. She has resided in Texas for over 30 years and has two U.S. citizen children.   Plaintiff MARY DOE currently has Temporary Protected Status ("TPS"), a temporary immigration benefit granted by the U.S. Secretary of Homeland Security.   Plaintiff MARY DOE also has a pending application for lawful permanent residency based on her relationship to her U.S. citizen son. Although she is a recipient of TPS, and is lawfully present in the United

States, Plaintiff MARY DOE is subject to arrest, detention, prosecution, incarceration and removal to Mexico under SB 4.  Plaintiff MARY DOE's country of origin is El Salvador.

10.   Plaintiff JOHN DOE is a non-U.S. citizen and a resident of McLennan County, Texas. Plaintiff JOHN DOE has a pending petition with U.S. Citizenship and Immigration Services under the Violence Against Women Act ("VAWA") because he was abused by his former spouse, a U.S. citizen.  Plaintiff JOHN DOE will be eligible to apply for lawful permanent residency after his VAWA application is approved. Although he has a pending application for immigration relief, Plaintiff JOHN DOE is subject to arrest, detention, prosecution, incarceration and removal to Mexico under SB 4.  Plaintiff JOHN DOE's country of origin is Honduras.

11.   Plaintiff JAMES DOE is a non-U.S. citizen and a resident of Bastrop County, Texas. Plaintiff JAMES DOE has resided in Texas for over 20 years.  Plaintiff JAMES DOE has a pending petition with U.S. Citizenship and Immigration Services under the Violence Against Women Act ("VAWA") because he was abused by his former spouse, a U.S. citizen.  Plaintiff JAMES DOE will be eligible to apply for lawful permanent residency after his VAWA application is approved.  Although he has a pending application for immigration relief, Plaintiff JAMES DOE is subject to arrest, detention, prosecution, incarceration and removal to Mexico under SB 4. Plaintiff JAMES DOE's country of origin is Honduras.

**B.    Defendants**

12.   Defendant GREG ABBOTT is Governor of Texas. Defendant Abbott is sued in his official capacity. Defendant Abbott is the chief executive officer and the chief law enforcement

officer of the State of Texas. Defendant Abbott is responsible for ensuring that the laws of Texas are faithfully executed, including SB 4.

13.     Defendant STEVEN C. MCCRAW is the Director and Colonel of the Texas Department of Public Safety (DPS). He is responsible for the conduct of the DPS's affairs and serves as the executive director of the DPS. Defendant McCraw was appointed to his position by the Texas Public Safety Commission and is directly responsible to the Commission for the operations of DPS, including enforcement of SB 4. Defendant McCraw adopts rules, subject to Commission approval, considered necessary for the operation of DPS. Defendant McCraw is sued in his official capacity.

14.     Defendant WARREN K. ("KEN") PAXTON is the Attorney General of Texas. He is sued in his official capacity.  The Attorney General is Texas' chief law enforcement officer. With respect to SB 4, Defendant Paxton has the authority to assist in prosecutions of criminal cases as second chair.  Defendant Paxton also has the authority to take the lead on prosecutions at the invitation of a local district attorney.  In addition, Defendant Paxton can task employees of the Office of the Attorney General to investigate violations of SB 4, and train prosecutors and investigators to enforce SB 4.

15.     In a related attempt to enforce federal immigration law, Defendant Paxton recently filed suit against Annunciation House, a non-profit shelter located in El Paso, to revoke the organization's registration to operate in Texas on the claim that "Annunciation House's provision of shelter to migrants who avoided law enforcement when crossing the Rio Grande facilitates and aids and abets violation of 8 U.S.C. § 1325(a)."[1]

---

[1] *See* Press Release "Attorney General Ken Paxton Sues to End NGO's Operations In Texas After Discovering Potential Efforts to Facilitate Illegal Immigration", available at https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-sues-end-ngos-operations-texas-after-discovering-potential-efforts and The Office of the Attorney General's [Proposed]

16. Defendant TORIBIO "TERRY" PALACIOS is the Hidalgo County District Attorney. He is authorized to investigate and prosecute violations of SB 4 in Hidalgo County. He is sued in his official capacity.

17. Defendant BRYAN GOERTZ is the Bastrop County District Attorney. He is authorized to investigate and prosecute violations of SB 4 in Bastrop County. He is sued in his official capacity.

18. Defendant JOSH TETENS is the McLennan County District Attorney. He is authorized to investigate and prosecute violations of SB 4 in McLennan County. He is sued in his official capacity.

19. Defendant KIM OGG is the Harris County District Attorney. She is authorized to investigate and prosecute violations of SB 4 in Harris County. She is sued in her official capacity.

## IV.   STATEMENT OF FACTS

### A.   Federal Immigration System

20. The U.S. Constitution grants the federal government the power to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3. The federal government "has broad, undoubted power over the subject of immigration and the status of" non-U.S. citizens. *Arizona v. U.S.*, 567 U.S. at 394 (2012).

---

Petition and Counterclaim in the Nature of Quo Warranto in *Annunciation House, Inc. v. Ken Paxton, et al.*, Cause no. 2024DCV0616, In the District Court of El Paso County Texas, 205th Judicial District, available at https://www.texasattorneygeneral.gov/sites/default/files/images/press/Annunciation%20House%20Answer%20and%20Counterclaim%20Filed.pdf.

21.     As explained by the U.S. Supreme Court in *Arizona v. U.S.*, "where Congress occupies an entire field…even complementary state regulation is impermissible. Field preemption reflects a congressional decision to foreclose any state regulation, even if it is parallel to federal standards." 567 U.S. 387, 401 (2012).

22.     Congress created the Immigration and Nationality Act ("INA"), which is a system of federal laws to regulate and enforce immigration.  *See* 8 U.S.C. § 1101 *et seq*.  This extensive statutory scheme leaves no room for supplemental state laws.

23.     The federal government has also issued numerous regulations, policies, and procedures to interpret the provisions of the INA and has established a large and intricate administrative framework to carry out its mandates.

24.     The INA's framework contains procedures to determine: 1) immigration and citizenship status; 2) whether the civil provisions of the immigration laws have been violated; and 3) whether an individual may lawfully remain in the U.S.

25.     The INA carefully measures the nature (criminal or civil) and degree of penalties applicable to each possible violation of the terms included in the framework. The INA's comprehensive structure will determine whether a certain person may or may not remain in the U.S., and it may depend on the discretion of federal officials.

26.     State law is also preempted when it conflicts with federal law, including when it creates inconsistent penalties for the same conduct; this conflict is "an intrusion upon the federal scheme." *Arizona v. United States*, 567 U.S. 387, 402 (2012).

27.     The INA includes a removal framework in which federal, not state officials, determine who must be removed and the timing and manner of removal. There are many non-U.S. citizens who are present in the United States without federal permission who could receive an

"order to return to foreign nation" under SB 4, yet would not be removed if placed in federal removal proceedings.  For example, an individual may be eligible for some form of immigration relief, such as: asylum, adjustment of status, or withholding of removal.  Some of these individuals are known to the federal government; others will not be identified until they are actually placed in proceedings by the federal government and their cases are adjudicated. Some individuals may be given an option to depart the United States instead of being subject to removal or being removed.

28.    Empowering state officers to decide who unlawfully crosses the border with a foreign nation conflicts with federal immigration law, which grants that power only to federal officers.  As explained by the U.S. Supreme Court, "By authorizing state officers to decide whether an alien should be detained for being removable, [the Arizona law] violates the principle that the removal process is entrusted to the discretion of the Federal Government." *Arizona v. United States*, 567 U.S. at 409 (2012).

**B.    Senate Bill 4**

29.    Texas Governor Greg Abbott signed SB 4 into law on December 18, 2023. SB 4 was scheduled to take effect on March 5, 2024. It adds Chapter 5B to the Texas Code of Criminal Procedure and Chapter 51 to the Texas Penal Code.

30.    Texas enacted SB 4 with the knowledge that it is likely preempted by federal law.  On January 4, 2023, the Texas Senate Committee on Border Security stated in its Interim Report to the 88th Legislature, "In [the] context of immigration, any state law that attempts to regulate immigration will be preempted since immigration authority is exclusively the responsibility of the federal government."

31.  On March 16, 2023, Texas Attorney General Ken Paxton testified before the Texas Senate Border Security Committee that although he disagreed with its rulings, the U.S. Supreme Court had declared that state laws that attempt to regulate immigration are preempted by federal law.  Defendant Paxton testified, "We are most frustrated with . . . *Arizona v. United States* because it confined and basically preempted state law that somehow conflicted with or potentially took part of the field of the federal government." *Public Hearing Before the S. Comm. on Border Sec.*, 2023 Leg., 88th Sess. (Tex. 2023) (statement of Ken Paxton, Att'y Gen. of Texas starting at 9:06), https://tlcsenate.granicus.com/MediaPlayer.php?view_id=53&clip_id=17395.  He explained that in *Arizona v. United States*, "Arizona had . . . tried to pass laws similar to what the federal government passed . . . Unfortunately, the court's ruling by saying that the state couldn't step in and pass these laws put these states in a really horrible position." *Id.*

32.  Despite his understanding that Texas cannot enact laws that give state officers the powers of federal immigration officers, Defendant Paxton urged the Texas Legislature to enact laws that he knows are preempted in order to try to overturn Supreme Court precedent:  "I have been saying this for two years that we should do what we can to try and overturn that decision. We've got a different court and the best chance we've ever had to overturn that and give the states the ability to protect their citizens." *Id.*  Defendant Paxton continued "We're gonna have to figure out where are the areas we want to test. And that's part of why I've been saying for two years [that] we should test U.S. v. Arizona. . .  I think part of it is just we don't know 'til we get to court and test it." *Id.*

33.  The Texas Legislature accepted Defendant Paxton's invitation to enact a law that regulates immigration and worked through the regular legislative session and four special sessions

called by Governor Abbott to accomplish this goal.   Prior to the passage of SB 4, the 88th Texas Legislature considered, but did not pass, several similar pieces of legislation, including: House Bill 1600 and Senate Bill 2424 (88th regular session), Senate Bill 2 (88th first called session), and Senate Bill 11 (88th third called session). House Bill 1600 would have created a state felony offense of illegal entry from Mexico by any person who is not a U.S. citizen or legal permanent resident. Senate Bill 2424 similarly would have created a Class B Misdemeanor, with the possibility of elevation to a state jail felony under certain circumstances, of illegal entry from Mexico by a person who is not a U.S. citizen or legal permanent resident. Senate Bills 2 and 11 would have created a state criminal offense for "improper entry from foreign nation" by "an alien." The 88th Texas Legislature failed to pass these predecessor bills but finally did pass SB 4 in the final called session.

34. SB4's addition of Chapter 51 to the Texas Penal Code creates three new state crimes: Illegal Entry from Foreign Nation, § 51.02 ("State Illegal Entry"); Illegal Reentry by Certain Aliens, § 51.03 ("State Illegal Reentry"); and Refusal to Comply with Order to Return to Foreign Nation, § 51.04 ("Refusal to be Removed").

35. These offenses can only be committed by a person who is an "alien" as defined by 8 U.S.C. § 1101, which is any person who is not a citizen or national of the U.S.

36. The State Illegal Entry offense criminalizes an entry or an attempt to enter Texas directly from a foreign nation at any location other than a lawful port of entry by "a person who is an alien."

37.  The State Illegal Entry offense is a Class B misdemeanor with possible punishment of a fine up to $2,000, or confinement of up to 180 days in jail, or both. The offense is elevated to a state jail felony if the person has previously been convicted under this section.

38. SB 4 creates affirmative defenses to prosecution for State Illegal Entry if the: 1) federal government has granted the non-U.S. citizen lawful presence in the U.S. or asylum; 2) the non-U.S. citizen's conduct does not violate 8 U.S.C. § 1325(a); or 3) the non-U.S. citizen "was approved for benefits under the federal Deferred Action for Childhood Arrivals ("DACA") program between June 15, 2012, and July 16, 2021."

39. The State Illegal Reentry offense makes it a crime for a "person who is an alien" to enter, attempt to enter, or at any time be found in this state after the "alien" has 1) been denied admission to or excluded, deported, or removed from the U.S.; or 2) has departed from the U.S. while an order of exclusion, deportation, or removal is outstanding.

40. SB 4 provides no affirmative defenses to a charge of Illegal Reentry.

41. The State Illegal Entry offense is a Class A misdemeanor with possible punishment of a fine up to $4,000, or confinement of up to one year in jail, or both. *See* Tex. Penal Code § 12.21. Under certain circumstances, this offense is elevated to a third-degree felony punishable by imprisonment between 2 to 10 years and a fine up to $10,000, or a second-degree felony punishable by imprisonment between 2 to 20 years and a fine up to $10,000. *See* Tex. Penal Code §§ 12.33, 12.34.

42. An order of removal under this section includes an order to return to foreign nation or order of removal issued under federal law or state law, or any other agreement in which "an alien" stipulates to removal pursuant to a criminal proceeding under either federal or state law.

43. The Refusal to be Removed offense is a second-degree felony punishable by imprisonment between 2 to 20 years and a fine up to $10,000. *See* Tex. Penal Code § 12.33.

44.   SB4's addition of Chapter 5B to the Texas Code of Criminal Procedure authorizes magistrates and judges to order the removal of a person from the U.S. who has been charged with a State Illegal Entry or State Illegal Reentry crime, so long as other criteria is met, including that 1) the person agrees to the order, and 2) the person is not charged with another offense that is punishable by a Class A misdemeanor or any higher category of offense.

45.   Chapter 5B also requires a judge to issue an Order of Return to Foreign Nation ("Order to Return") if a person is convicted of a state immigration offense under Chapter 51 of the Texas Penal Code. The Order to Return takes effect on "completion of the term of confinement or imprisonment imposed by the judgment" and requires that the person "return to the foreign nation from which the person entered or attempted to enter."

46.   SB 4 prohibits Texas courts from abating the prosecution of an individual charged with an offense under Chapter 51 of the Texas Penal Code "on the basis that a federal determination regarding the immigration status of the defendant is pending or will be initiated."

47.   SB 4 adds Article 42A.059 to the Texas Code of Criminal Procedure which denies an individual who is charged or convicted of an offense under Chapter 51 of the Texas Penal Code the possibility of community supervision or deferred adjudication community supervision.

48.   SB 4 amends Section 508.149 of the Tex. Gov. Code to prohibit the release of an inmate to mandatory supervision if the inmate is serving a sentence for an offense of State Illegal Reentry or Refusal to be Removed.

49.     SB 4 includes a severability provision that states that if the application of any provision of SB4 is found invalid by a court, the remaining applications of that provision to all other persons and circumstances shall be severed and may not be affected.

**C.     The Effect of Senate Bill 4 on Plaintiffs**

50.      SB 4 creates a state immigration system, separate and apart from the federal immigration system, that intrudes on a field under the exclusive authority of the federal government, as well as conflicts with the federal immigration system. SB 4 authorizes state and local officers to arrest, detain, prosecute and incarcerate non-U.S. citizens for Illegal Entry, Illegal Reentry, or Refusal to be Removed, and requires state judges and magistrates to order the removal of non-U.S. citizens to Mexico.

51.     Under SB 4, state officers will make citizenship and immigration status determinations and enforce a state immigration scheme despite protections built into the comprehensive federal immigration system that exists to determine entry, removal, eligibility for humanitarian and immigration relief and the condition under which non-U.S. citizens live in the United States.

<u>Plaintiff LUPE</u>

52.     Plaintiff LUPE provides numerous services to its members, including low-income non-U.S. citizens, in the geographic areas it serves, including: legal consultations and representation, social services, English classes, know-your-rights discussions, membership meetings, issue-based advocacy, and organizing to help communities advocate for better living conditions.

53.     Plaintiff LUPE's immigration legal services work consists of: consultations and legal advice; preparation of affirmative immigration applications and petitions; representation

before the United States Citizenship and Immigration Services, the Board of Immigration Appeals, and the Executive Office for Immigration Review; removal defense; and, if necessary, referrals for coordinated services from other legal service providers.

54. The majority of LUPE's immigration legal services clients are non-detained non-U.S. citizens seeking asylum. A significant number of LUPE's immigration legal services clients are subject to arrest, detention, prosecution, incarceration and removal under SB 4's illegal re-entry provisions because they are non-detained non-U.S. citizens who are present in Texas and have been denied admission to or excluded, deported, or removed from the United States or have departed from the United States while an order of exclusion, deportation, or removal is outstanding.

55. LUPE provides immigration legal services through one immigration attorney, an accredited representative, service providers, and a legal assistant. LUPE provides immigration consultations at four of LUPE's offices: San Juan, Alton, Rio Grande City, and San Benito. LUPE charges fees for consultations and legal representation. Fee income from immigration consultations and cases constitutes nearly 40% of LUPE's annual revenue.

56. SB 4 will impair LUPE's ability to provide immigration legal services to non-detained non-U.S. citizens, including non-detained asylum seekers, because SB 4 will interfere with LUPE's access to its members who are arrested under SB 4 and who have open immigration cases with LUPE. These individuals will not be able to appear for their immigration case appointments at LUPE or appear for interviews or hearings with federal immigration authorities. SB 4 will obstruct LUPE's access to its clients, interfere with its ability to provide effective legal representation, and will reduce the number of people

LUPE is able to serve. SB 4 will interfere with, and prematurely close, the immigration cases of LUPE members who are incarcerated or removed from the U.S. under SB 4 and thus unable to appear for their immigration appointments at LUPE or interviews and hearings within the federal immigration system. This reduction will decrease LUPE's annual revenue and future grant eligibility for this type of work if certain quotas are not met.

57.     For non-detained non-U.S. citizens that are current LUPE members who are arrested pursuant to SB 4, LUPE will have to shift its work to develop a system to identify, track, screen, and refer its members held in jails to legal service providers that can handle criminal matters. LUPE will have to prioritize members who have criminal charges brought against them under SB4 who are eligible for asylum but who have not filed their asylum application by the time of arrest because individuals eligible for asylum must apply for asylum within one year from their date of arrival to the U.S.  This will present obstacles for LUPE because non-U.S. citizens arrested under SB 4 may be issued an Order to Return to Foreign Nation from a magistrate as quickly as 48 hours after being arrested. This means that the LUPE immigration service providers must prioritize this work over working on existing immigration cases and immigration consultations.

58.     LUPE currently has seven community organizers on its staff who work on non-immigration issues and one vacancy for a community organizer whose focus would be colonia infrastructure issues and farm worker organizing. The duties for the vacant position include working with 10 colonias to advocate for public street lighting, county clean ups, drainage infrastructure, and farm worker organizing for better compensation and housing. This vacancy will be placed on hold in order to hire an immigration-focused community

organizer in response to SB 4 to provide community education about the offenses and penalties created by SB 4.  As a result, LUPE will have to postpone indefinitely the farm worker organizing that would have been done by an organizer.

59.    The new immigration-focused community organizer will prepare and present community education and Know-Your-Rights presentations on SB 4, train LUPE staff to present Know-Your-Rights presentations, procure and distribute "deportation preparedness" toolkits at the Know-Your-Rights presentations, and respond to member requests for information about SB4.

60.    LUPE does not have a program or staff dedicated to serving detained non-U.S. citizens and does not have a criminal defense attorney on its staff to handle criminal cases. The immigration-focused community organizer and immigration service providers at LUPE will receive calls from relatives of LUPE members and community members arrested under SB 4 and will provide those individuals a list of legal service providers that can help with criminal matters. This work will decrease the amount of time each immigration service provider is able to speak with new and existing immigration clients each day and the amount of work each immigration service provider is able to produce for their immigration cases and consultations.

61.    The number of non-detained non-U.S. citizens that LUPE provides immigration legal services to will decrease because LUPE will have to spend more time responding to calls for assistance from LUPE members and community members who have been arrested under SB 4. LUPE will compensate the immigration-focused community organizer with funds from its reserves that otherwise would have been spent on other purposes.  LUPE's draining of resources to respond to SB 4 will thwart LUPE's mission of providing

immigration legal services to non-detained non-U.S. citizens as part of its work to empower communities in the Rio Grande Valley.

62.     LUPE Member A is a non-U.S. citizen and is a resident of Hidalgo County, Texas.  LUPE Member A has lawful presence in the United States through military Parole in Place.  LUPE Member A also has federal employment authorization. Nevertheless, LUPE Member A is subject to arrest, detention, prosecution, incarceration and removal to Mexico by state and local officials under SB 4 because, over 20 years ago and before she gained her lawful presence, LUPE Member A was "denied admission to or excluded, deported, or removed from the United States; or [] departed from the United States while an order of exclusion, deportation, or removal [was] outstanding."  Although LUPE Member A has received a favorable exercise of discretion by federal immigration authorities and has lawful presence, if SB 4 is not enjoined, LUPE Member A can be prosecuted under SB 4 because military Parole in Place is not an affirmative defense under SB4.  If arrested, tried, incarcerated and/or removed to Mexico, LUPE Member A will be separated from her husband and adult children who live in Texas.

Doe Plaintiffs

63.     All Doe Plaintiffs face arrest, detention, prosecution, incarceration and removal to Mexico because they meet the elements of Illegal Reentry under SB 4.  All Doe Plaintiffs are present in Texas, and they entered the U.S. after they were "denied admission to or excluded, deported, or removed from the United States; or [] departed from the United States while an order of exclusion, deportation, or removal is outstanding."Despite    each of them having pathways to permanent lawful status under federal law—and their presence being known to federal immigration authorities through submission of their applications,

they can be prosecuted under SB 4 because a favorable exercise of discretion by federal immigration authorities is not an affirmative defense under SB4.

64.     Plaintiff JOHN DOE resides in McLennan County.  He will suffer harm because his arrest and deportation under SB 4 would separate him from his minor U.S. citizen son for whom he is a primary caregiver. JOHN DOE is originally from Honduras and has no ties to Mexico, the country to which he would be removed under SB4.  If SB 4 is not enjoined, he will risk potential arrest, conviction and incarceration under SB4.  Plaintiff JOHN DOE also faces removal to a country he does not know under SB4.

65.     Plaintiff MARY DOE was ordered removed *in absentia* in 1993 and her removal order was later rescinded.  However, because she traveled to El Salvador as a TPS holder based on an approved request for Advance Parole while her removal order was still valid, she faces arrest, incarceration and removal under SB 4's Illegal Reentry provision.

66.     Plaintiff MARY DOE resides with her husband and daughter in McLennan County.  She helps care for her elderly parents who are in poor health.  Plaintiff MARY DOE would be harmed by separation from her family, preventing her from caring for her elderly parents and from maintaining relationships with her U.S. citizen children. Having lived in the U.S. over 30 years and with all of her immediate relatives either in the U.S. or deceased, Mary Doe no longer has any ties to El Salvador. If SB4 is not enjoined, Plaintiff Mary Doe will not be able to go to work, care for her parents' medical needs, or spend time with family without risking potential arrest and detention.  Plaintiff MARY DOE also faces removal to a country she does not know under SB4.

67.     Plaintiff JAMES DOE was "denied admission to or excluded, deported, or removed from the United States; or [] departed from the United States while an order of exclusion,

deportation, or removal [was] outstanding."  Despite his pending VAWA petition, he faces criminal liability under SB 4 for illegal reentry.

68.   Plaintiff JAMES DOE resides in Bastrop County and provides critical financial support to his entire family, including helping his sister attend college and paying the bills and housing costs for his mother and stepfather. Plaintiff's family risk losing their home if he is prosecuted and removed under SB 4.  His U.S. citizen sister would be forced to drop out of college.

69.   In addition to his family being based in the United States, as a gay man, Plaintiff JAMES DOE would face additional risk of harm due to the lack of protections for the LGBTQ community in Honduras.  He also faces removal to a country he does not know under SB 4.

70.   Plaintiff SARAH DOE was "denied admission to or excluded, deported, or removed from the United States; or [] departed from the United States while an order of exclusion, deportation, or removal [was] outstanding."  Despite approval of her T Visa and subsequent grant of lawful permanent residency by the federal government, Plaintiff SARAH DOE faces prosecution and removal for illegal reentry under SB 4.

71.   Plaintiff SARAH DOE resides in Harris County. She fears removal to Mexico, a country she does not know, because of the discrimination and victimization she faces as a trans woman.

## V.     CLAIMS FOR RELIEF

### Count I: Senate Bill 4 is Preempted.

### *All Plaintiffs*

72.   Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth here.

73.   The Supremacy Clause, Article VI, Section 2, of the U.S. Constitution provides:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution of Laws of any State to the Contrary notwithstanding.

74.   The Supremacy Clause mandates that federal law preempts state law in any area over which Congress expressly or impliedly has reserved exclusive authority or which is constitutionally reserved to the federal government, or where state law conflicts or interferes with federal law.

75.   SB 4 is constitutionally, field and conflict preempted. It endeavors to regulate matters that fall exclusively under the jurisdiction of the federal government, and SB4 operates within a field over which Congress wields exclusive authority.

76.   SB 4 also runs afoul of the Supremacy Clause by conflicting with federal statutes, opposing federal decisions regarding the admission and release of non-U.S. citizens, imposing unauthorized penalties and burdens contrary to federal law, instituting its own immigration classifications, and mandating state officers to unilaterally enforce immigration measures.

**Count II: Senate Bill 4 Violates the Fourth and Fourteenth Amendments to the U.S.**

**Constitution, U.S. Const. Amend. IV and XIV.**

***Plaintiff LUPE***

77.    Plaintiff LUPE re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth here.

78.    The Fourth Amendment to the U.S. Constitution prohibits "unreasonable searches and seizures."  The Fourth Amendment's guarantees are applied to the States through the Fourteenth Amendment.

79.    SB 4 authorizes state officers to conduct unreasonable seizures of individuals in violation of the Fourth Amendment.  Under SB 4, state officers have authority to arrest and detain individuals whom they suspect of being non-U.S. citizens in violation of the offenses set forth in SB4, including LUPE member A.

80.    Any seizure and detention under SB 4 is per se unreasonable because SB 4 is federally preempted, depriving state officers of any lawful authority to detain on the basis of unconstitutional state law.  SB 4 thus violates the Fourth Amendment.

**Count III: Senate Bill 4 Violates the Eighth and Fourteenth Amendments to the U.S.**

**Constitution, U.S. Const. Amend. VIII and XIV.**

***Plaintiff LUPE***

81.    Plaintiff LUPE re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth here.

82.    The Eighth Amendment to the U.S. Constitution provides that "cruel and unusual punishments" may not be inflicted. The Eighth Amendment's guarantees are applied to the States through the Fourteenth Amendment.

83.   SB 4 allows, and, in some cases, requires persons to remove themselves or to be ordered
      removed to Mexico, regardless of whether Mexico is the country of origin of those persons.
      These removals from Texas and the United States are accomplished through coercion of
      the state criminal-law system.  SB 4 thus would impose a criminal punishment of exile.

84.   Exile, including to a country unknown to an individual, is grossly disproportionate to the
      underlying misconduct and constitutes cruel and unusual punishment in the twenty-first-
      century United States.  SB 4 thus subjects Plaintiffs to the prospect of cruel and unusual
      punishment, in violation of the Eighth Amendment.

**Count IV: Senate Bill 4 Violates the Fourteenth Amendment to the U.S. Constitution, U.S.
Const. Amend. XIV (Due Process - Void for Vagueness).**

*All Plaintiffs*

85.   Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding
      paragraphs of this Complaint as though fully set forth herein.

86.   Under the Fourteenth Amendment, the constitutional right of due process ensures that no
      person shall be deprived of "life, liberty, or property, without due process of law,'" U.S.
      Const. amends. V, XIV.

87.   A criminal law is unconstitutionally vague, and in violation of the Constitution's
      requirements of due process where it is either "*so* vague that it fails to give ordinary people
      fair notice of the conduct it punishes, or so standardless that it invites arbitrary
      enforcement."  *Johnson v. United States*, 576 U.S. 591, 595 (2015) (Scalia, J.) (quoting
      *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983)) (emphasis added).

88.   SB 4's state illegal reentry offense, codified under Section 51.03 of the Texas Penal Code,
      is unconstitutionally vague for two reasons. First, the incoherent and undefined terms used

in the state illegal reentry statute "fail[] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado,* 530 U.S. 703, 732 (2000).

89.   Second, SB 4's language setting forth the illegal reentry offense authorizes or encourages arbitrary and discriminatory enforcement, as local and state law enforcement and the judicial officers charged with enforcing SB 4 do not have the expertise to interpret the nuances of federal immigration law relevant to determining how the law applies to a given individual.

90.   At least six terms or phrases render the statute unconstitutionally vague, including: (1) "denied admission," (2) "excluded," (3) "deported," or (4) "removed" from the United States, (5) "order of exclusion," and (6) "order of . . . deportation" (collectively, "the disputed terms"). *Id.*

91.   SB 4 does not define any of the disputed terms nor include textual references to other state or federal statutory provisions that could elucidate the terms' intended and fixed meanings. *Id.*

92.    Federal immigration law refers to similar terms, but the federal counterparts have very specific meanings that are defined under federal law and policy. That certain terms of art exist in federal immigration law does not cure SB 4's vagueness problem.

93.   Accordingly, on its face, SB 4 has not provided sufficient notice of what the disputed terms mean and by extension, what conduct they actually criminalize.

94.   The failure of the Texas Legislature to define central legal terms that constitute elements of the state illegal reentry crime renders Tex. Penal Code § 51.03, as created by SB 4,

impermissibly vague, as there is no way for ordinary people to understand what specific conduct is punishable here.

95.   SB 4 further fails to provide any textual standards to govern the actions of the Texas state officials who are empowered to enforce SB 4.

96.   The Due Process Clause does not permit subjecting any person in the United States to criminal penalties on these terms because they are indeterminate, incoherent, and standardless.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

1.      A declaratory judgment that Senate Bill 4 is unconstitutional and violates:

    a.      The Supremacy Clause to the U.S. Constitution;

    b.      the Fourth Amendment to the U.S. Constitution as unreasonable searches and seizures;

    c.      the Eighth Amendment to the U.S. Constitution as infliction of cruel and unusual punishments;

    d.      the Fourteenth Amendment to the U.S. Constitution as void for vagueness under the Due Process Clause;

2.      An injunction prohibiting Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from enforcing any of Senate Bill 4;

3.      An order awarding Plaintiff their costs, expenses, and reasonable attorneys' fees in this action; and

4.      Granting any such other and further relief as this Court deems just and proper.

Dated:  March 12, 2024                    Respectfully submitted,


                                          MEXICAN AMERICAN LEGAL
                                          DEFENSE AND EDUCATIONAL FUND
                                          By: /s/ Fátima L. Menéndez
                                          Thomas A. Saenz (Cal. Bar No. 159430)*
                                          Nina Perales (Tex. Bar No. 24005046)
                                          Fátima L. Menéndez (Tex. Bar No. 24090260)
                                          110 Broadway, Suite 300
                                          San Antonio, Texas 78205
                                          Phone: (210) 224-5476
                                          Facsimile: (210) 224-5382
                                          tsaenz@maldef.org
                                          nperales@maldef.org
                                          fmenendez@maldef.org

                                          *Attorneys for Plaintiff LUPE*

                                          NATIONAL IMMIGRATION LAW CENTER
                                          Lisa S. Graybill
                                          (Tex. Bar No. 24054454)
                                          P.O. Box 40476
                                          Austin, TX 78704
                                          Phone: (213) 493-6503
                                          Facsimile: (213) 639-3911
                                          graybill@nilc.org

                                          NATIONAL IMMIGRATION LAW CENTER
                                          Lynn Damiano Pearson*
                                          (Georgia Bar No. 311108)
                                          3450 Wilshire Blvd., No. 108-62
                                          Los Angeles, CA 90010
                                          Phone: (213) 639-3900
                                          Facsimile: (213) 639-3911
                                          damianopearson@nilc.org

                                          *Attorneys for Doe Plaintiffs*

                                          *Pro Hac Vice Applications Forthcoming*

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that, on March 12, 2024, I electronically filed the above and foregoing document using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ Fátima L. Menéndez
Fátima L. Menéndez